UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| BARBARA FAKHOURI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Case No.: 3:13-CV-517 |
| ) | Judges Collier |
| OBER GATLINBURG, INC., ) | |
| ) | |
| Defendant. ) | |

**M E M O R A N D U M**

Before the Court is Defendant Ober Gatlinburg Inc.'s ("Defendant") motion for summary judgment (Court File No. 18).  Plaintiff Barbara Fakhouri ("Plaintiff") responded opposing the motion (Court File No. 20). For the reasons set forth below, the Court will **GRANT** Defendant's motion for summary judgment (Court File No. 18).

**I.    BACKGROUND**

Defendant operates a ski area and a number of other attractions in Gatlinburg Tennessee. On August 30, 2012, Plaintiff, an amputee confined to a wheelchair, was visiting Gatlinburg with her grandchildren. Plaintiff boarded Defendant's passenger tramway and rode it to the top of the mountain to visit Defendant's non-skiing attractions.  When Plaintiff tried to board the tramway for the return trip down the mountain, the wheel of Plaintiff's wheelchair got stuck, the wheelchair was ripped off the tramway, and Plaintiff was thrown from the wheelchair.  Plaintiff filed this action alleging that her injuries were caused by the negligence of Defendant's employees.

## II. STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

To survive a motion for summary judgment, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-cv-63, 2009 WL 3762961, at *2–3 (E.D. Tenn. Nov. 4, 2009) (explaining the court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court

should grant summary judgment. *Id.* at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

**III. ANALYSIS**

The question before the Court is an issue of statutory interpretation. As a Court sitting in diversity, and because SASLA is a Tennessee statute, the Court applies Tennessee substantive law as decided by the Tennessee Supreme Court. *See Kessler v. Visteon Corp.*, 448 F.3d 326, 329 (6th Cir. 2006). If the Tennessee Supreme Court has not yet addressed this issue, the Court "predict[s] how it would rule, by looking to 'all relevant data,' including state appellate decisions." *Id*. When interpreting a Tennessee statute, the Court "must first ascertain and then give full effect to the General Assembly's intent and purpose." *Waldschmidt v. Reassure Am. Life Ins. Co.*, 271 S.W.3d 173, 176 (Tenn. 2008). The goal should be to effectuate the legislative intent behind the statute without unduly straining the language. *Seals v. H & F, Inc.*, 301 S.W.3d 237, 242 (Tenn. 2010). The Court must "presume that every word in a statute has meaning and purpose and should be given full effect if so doing does not violate the legislature's obvious intent." *Id*.

Defendant argues that the Ski Area Safety and Liability Act ("SASLA"), Tenn. Code Ann. § 68-114-103, relieves Defendant from liability in this case. Under the SASLA, ski area operators are not liable for certain injuries to skiers and passengers of tramways at ski areas. Tenn. Code Ann. § 68-114-103 provides, in relevant part, that:

> Except as otherwise specifically provided in this chapter, each skier or passenger is deemed to have assumed the risk of and legal responsibility for any injury to the skier's or passenger's person or property arising out of the skier's or passenger's participation in Alpine or downhill skiing or the use of any passenger tramways associated with Alpine or downhill skiing.

3

Tenn. Code Ann. § 68-114-103.

Plaintiff argues that she does not fall within the scope of the act because her use of the passenger tramway was not "associated with Alpine or downhill skiing." She argues that because she was using the tramway to get to attractions other than alpine skiing, the exclusion does not apply. The liability exclusion applies to two classes of people—skiers and passengers—in a specific location—a ski area. A passenger is

> any person, while being transported or conveyed by a passenger tramway, or while waiting in the immediate vicinity for such transportation or conveyance, or while moving away from the disembarkation or unloading point of a passenger tramway to clear the way for the passengers following, or while in the act of boarding or embarking upon or disembarking from, a passenger tramway.

Tenn. Code Ann. § 68-114-102(2). A skier is "any person present in a ski area for the purpose of engaging in the sport of skiing, Nordic, freestyle or other types of ski jumping and who is using skis, a sled, a tube or a snowboard." Tenn. Code Ann. § 68-114-102(6). A ski area is "all the ski slopes and ski trails and passenger tramways administered or operated as a single enterprise within [the] state." Tenn. Code Ann. § 68-114-102(4). On the undisputed facts, Plaintiff was a passenger and Ober Gatlinburg operates a ski area. The question before the Court is thus whether Plaintiff's use of the tramway qualified as "use of any passenger tramways associated with Alpine or downhill skiing." Applying the principles of statutory construction set forth above, the Court concludes that SASLA relieves Defendant of liability in this case.

Plaintiff argues that the statute should be construed narrowly to only apply to those individuals who planned to participate in the sport of downhill skiing. But to read the statute in this way would effectively read the word passenger out of the statute. The word skier already encompasses all of those who would be covered by Plaintiff's definition: "any person present in a ski area for the purpose of engaging in the sport of skiing, Nordic, freestyle or other types of

4

ski jumping and who is using skis, a sled, a tube or a snowboard." Tenn. Code Ann. § 68-114-102(6). Because the statute also covers passengers, it must encompass some class of people who are not present in the area for the purpose of those enumerated winter sports. The only way to read the statute to give effect to all of the words in the statute is to read "associated with Alpine or downhill skiing" as delineating the statute's coverage of a category of passenger tramway rather than a category of use by the passenger. That is to say, if the passenger tramway is "associated with Alpine or downhill skiing" then the exclusion applies regardless of whether the passenger intended to use the passenger tramway in a way that was "associated with Alpine or downhill skiing."

This reading is confirmed by other elements of the statute. Earlier in Tenn. Code Ann. § 68-114-103 the statute refers to "any slope, ski trail or associated passenger tramway," indicating that it is the character of the tramway that determines whether it is associated with downhill skiing rather than the use contemplated by the passenger. The statutory definition of ski area confirms that the Act's effects are not limited to the slopes themselves. *See* Tenn. Code Ann. § 68-114-102(4) (defining "ski area" as "all the ski slopes and ski trails and passenger tramways administered or operated as a single enterprise").

This reading is also consistent with the legislative intent as revealed by the text and structure of the statute. The Tennessee legislature "recognized that Alpine or downhill skiing as a recreational sport and the use of passenger tramways associated with Alpine or downhill skiing may be hazardous to skiers or passengers, regardless of all feasible safety measures that can be taken." Tenn. Code Ann. § 68-114-103. The hazards for passengers of the tramway are the same regardless of whether they intend to participate in winter sports or intend to use the tramway to take advantage of other attractions. The act further provides that:

5

> Unless a ski area operator is in violation of this chapter or other state acts pertaining to ski areas, which violation is causal of the injury complained of, no action shall lie against any such operator by any skier or passenger or representative of a skier or passenger; this prohibition shall not, however, prevent the maintenance of an action against a ski area operator for negligent design construction, or operation maintenance of the passenger tramway itself.

Tenn. Code Ann. § 68-114-107. This provision further confirms that the activity engaged in by Plaintiff was exactly the type of situation where the statute was designed to protect ski area operators from liability. This provision makes clear that the Legislature expects a ski area operator to design, construct, and maintain passenger tramways as it would any other part of an attraction open to the public and is subject to liability where it fails to do so. But, the operator is relieved from liability where the Legislature determined that the danger was unavoidable—in the embarking, disembarking, and riding of the passenger tramway itself.

Finally, this reading is not at odds with existing precedent. In the only Tennessee case to interpret the scope of the statute, the Tennessee Court of Appeals held that SASLA did not preclude liability for the defendant ski operator for injuries suffered by a client due to negligently maintained ski equipment. *Terry v. Ober Gatlinburg, Inc.*, No. 03A01-9701-CV-00026, 1998 WL 54700 (Tenn. Ct. App. Feb. 3, 1998).[1] The *Terry* court noted that the statute did not refer to negligence in rental operations and, because the statute is in derogation of the common law, the court would not construe the statute to reach such a situation. *Id*. at *4. Here, the statute expressly refers to passengers embarking and disembarking from passenger tramways, so the

---

[1] In addition to *Terry*, Plaintiff also points to an unpublished federal district court decision from this district. *Alber ex rel. Albert v. Ober Gatlinburg, Inc.*, No. 3:02-CV-277, 2006 WL 208580 (E.D. Tenn. Jan. 25, 2006). Based on a broad reading of *Terry*, the *Alber* court found that SASLA did not apply to relieve the defendant operator from liability where the plaintiff argued that defendant caused her injuries by not closing the mountain when conditions were icy. *Id*. at *1. The Court cannot agree with the *Alber* Court's decision and, because the opinion is not binding on the Court, the Court will decline to follow it.

*Terry* opinion is simply inapplicable.[2]

Based on the undisputed facts, according to Tennessee state law Plaintiff assumed the risk of injury arising out of her use of Defendant's passenger tramway. She has not alleged that Defendant violated any regulation pertaining to ski areas. Pursuant to the terms of the statute and the undisputed facts, Defendant is entitled to judgment as a matter of law. *See* Tenn. Code Ann. § 68-114-103 (providing that passengers assume the risk of using a passenger tramway associated with skiing); Tenn. Code Ann. § 68-114-107 (providing that "Unless a ski area operator is in violation of this chapter or other state acts pertaining to ski areas, which violation is causal of the injury complained of, no action shall lie against any such operator by any . . . passenger"). The Court will thus **GRANT** Defendant's motion for summary judgment.

### IV. CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendant's motion for summary judgment (Court File No. 20).

**An order shall enter.**

**/s/**
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**

---

[2] Plaintiff argues that the *Terry* Court "held that SASLA permitted actions based on negligent operation of the passenger tramway." (Court File No. 20, Pl.'s Resp. at p. 11). The Court cannot agree with this reading of the *Terry* opinion. And to the extent that the opinion can be read to support such an argument, it would be entirely dicta, as the facts of the *Terry* case had nothing to do with a passenger tramway.